George C. Dade v. Commissioner. * Jesse E. Dade v. Commissioner. Martin Anderson v. Commissioner. Robert E. Dade v. Commissioner. Dade v. Commissioner
Docket Nos. 6825, 6826, 6827, 6837.
United States Tax Court
1946 Tax Ct. Memo LEXIS 121; 5 T.C.M. (CCH) 670; T.C.M. (RIA) 46181; July 31, 1946
Briggs G. Simpich, Esq., 1140 Woodward Bldg., Washington, D.C., for the petitioners. Walt Mandry, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These consolidated proceedings involve income tax deficiencies for the year ended December 31, 1941, in the following amounts: Docket
No.
Petitioner
Amount
6825
George C. Dade
$6,851.86
6826
Jesse E. Dade
6,566.54
6827
Martin Anderson
338.30
6837
Robert E. Dade
6,697.31
*122 The single issue common to the proceedings is whether the amounts, or any part thereof, paid by petitioners' corporate employer to a trust fund and used by the trustees of such fund to purchase combination life insurance and annuity contracts on petitioners' lives, among others, constitute taxable income to petitioners under section 22 (a) of the Internal Revenue Code in the year 1941, the year in which the policies were applied for and premiums paid. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. Petitioners are residents of New York and filed their income tax returns for 1941 on the cash receipts and disbursements basis with the collector of internal revenue for the first district of New York. They are associated with Dade Brothers, Inc., a New York corporation, organized in 1938. (It will hereinafter be referred to as the "corporation.") Originally the corporation was engaged in general construction and trucking operations but during the years 1940 and 1941 its principal activity was the preparation and boxing of aircraft for shipment abroad. The following summary shows the names of shareholders, *123 officers, and directors of the corporation: George C. Dade (son
President, Treas-
of Jesse E. Dade)
35 shares
urer & Director
Robert E. Dade (son
Vice-Pres., Sec'y
of Jesse E. Dade)
35 shares
and Director
Jesse E. Dade
10 shares
Chairman of Bd.
Nellie Dade (wife of
of Directors
Jesse E. Dade)
10 shares
Ass't Treas. and
Edith M. Dade (wife
Director
of Geo. C. Dade)
10 shares
Director
On December 1, 1941, an agreement was entered into by and between the corporation and George C. Dade, Robert E. Dade, and James B. Dailey, Jr., who was then a parttime employee of the corporation, as trustees of the Dade Brothers, Inc., Employees Trust Fund for the establishment of a "private bonus, profit-sharing employee participation plan." Under the terms of the agreement the corporation paid over to the trustees the sum of $46,500 on December 30, 1941. The trustees were to administer the sums paid over to them "solely for the following purposes": (a) Purchase of insurance or annuities on the lives of eligible employees. (b) Investment in securities which may be legal investment under the Laws of the State of New York for insurance companies or *124 savings institutions. (c) Deposit or accrual of funds in a recognized savings institution designated by the Trustees. (d) Payment of the expenses of the administration of the Trust and the maintenance of a checking account for such purpose. Those eligible to participate under the plan were the salaried employees and officers of the corporation who shall have earned or been paid over $2,000 for or during the calendar year 1941. Provision was also made to cover contingencies of the resignation, retirement or discharge of a participating employee. Ten officers and employees of the corporation were paid salaries in excess of $2,000 each during 1941, and therefore became eligible for participation in the plan. They were: Salary
George C. Dade, President, Treasurer,
and Director
$25,000.00
Jesse E. Dade, Chairman of the Board
28,125.00
Robert E. Dade, Vice-President, Secre-
tary, and Director
21,875.00
Martin R. Anderson, Construction
Manager
4,620.00
James B. Dailey, Jr., Comptroller
3,900.00
Charles G. Wayne, Plant Foreman
3,265.00
Peter H. Houck, Plant Foreman
2,585.00
Conrad J. Schroeder, Plant Foreman
2,678.75
John E. Foster, Plant Foreman
2,309.00
Jack P. Strenge, Plant Foreman
2,485.37
*125 On December 29, 1941, the trustees issued a check for $46,004.48 to Travelers' Insurance Company (hereinafter referred to as the "insurer") covering premiums on single premium insurance policies on the lives of the aforementioned 10 individuals. The insurer deposited the check on December 31, 1941. The following policies were issued on the lives of petitioners: George C. Dade
Petitioner's
Face
Policy No.
Contract Date
Age
Type of Policy
Amount
Premium
2,208,216
Jan. 2, 1942
29
Single Premium Insurance to
$10,000
$6,984.30
Age 65 with retirement in-
come
2,208,217
5,000
3,492.15
2,208,218
2,897
2,023.35
Jesse E. Dade
2,208,783
Jan. 5, 1942
63
Single Premium 10-year en-
14,230
12,494.08
dowment; Rider dated Jan.
8, 1942 provided for an op-
tional life income in lieu
of cash surrender value at
maturity
Martin R. Anderson
2,208,982
Jan. 5, 1942
44
Single Premium Retirement
3,573
2,500.42
Endowment
Robert E. Dade
2,202,586
Dec. 5, 1941
26
Single Premium Insurance to
10,000
6,558.60
Age 65 with retirement in-
come
2,202,587
5,000
3,279.30
2,205,746
Dec. 19, 1941
4,060
2,662.79
*126 Applications for all of the policies, except those issued on the life of Robert E. Dade, were executed by the trustees. Robert E. Dade, executed the applications for his own policies, at the request of the insurer, as he was traveling continuously. His policies were intended to be part of the plan established under the agreement of December 1, 1941, and on December 30, 1941, he assigned his right, title, claim, interest, and benefit under the three policies to the trustees. Each of the policies, pursuant to its terms, was "placed in force upon payment of the premium and the [delivery] of [the] * * * contract during the lifetime and good health of the insured." No payments other than that of $46,500, hereinbefore referred to, have been made to the trustees by the corporation. The corporation had 246 employees during the year 1941, of whom 236 earned less than $2,000 each during that year. Its employees increased to 2,000 for the year 1944. After V-J Day the number of employees decreased sharply and on October 27, 1945, the total number employed was 261. Its gross sales were approximately $200,000 for the year 1940, $1,000,000 for the year 1941, $5,000,000 for the year 1942, *127 and $12,000,000 for the year 1943. The corporation had no pension plan, bonus or profit-sharing plan, or program with respect to its employees generally, and none of its employees, other than petitioners and six others, received pension or retirement benefits. Respondent in his notice of deficiency determined, with reference to the premiums paid the insurer by the trustees for the combination insurance and retirement income policies on petitioners' lives that they constituted "income as additional compensation * * * taxable under the provisions of section 22 (a) of the Internal Revenue Code," to the respective petitioners. Opinion This proceeding presents a single issue - whether payments made by an employer to a trust and by it to an insurance company for single premium annuity and insurance coverage of petitioners, who were its employees, is taxable to the latter as additional compensation for their services. No question of deductibility by the employer under section 23, see, e.g., Chapman Chevrolet Co., Inc., 7 T.C. 428 (July 31, 1946), or of taxation of the trust under section 165, is involved. The four original petitioners included *128 three who between them owned 80 percent of the voting stock of the employer and whose wives owned the balance; and who constituted a majority of its board of directors. Creation of the trust and payment to it could not have been accomplished except by their contrivance. If they had chosen to receive the premiums as salary and themselves secured the policies, no other person could have interfered. It would then have made no difference that actual delivery by the insurance company was postponed to the succeeding year. Cf. Renton K. Brodie, 1 T.C. 275. We think the control of the situation by the three petitioners in question [1] demonstrates that they turned their backs upon the income, John A. Brander, 3 B.T.A. 231; and that it is nevertheless taxable to them as constructively received. D. D. Hubbell, 3 T.C. 626, affirmed (C.C.A., 6th Cir.), 150 Fed. (2d) 516; Richard R. Deupree, 1 T.C. 113. Robert P. Hackett, 5 T.C. 1325, even as regards the incidental statements not *129 necessary to the decision, is not authority otherwise. It did not there appear that the employee-stockholders were in control of the employer's voting stock, and particularly that the financial interest was confined to so small a family group. None of these observations, however, apply to petitioner Anderson. He was not entitled to draw the additional compensation in the year before us, cf. Richard R. Deupree, supra; he did not receive the policy in that year, cf. Renton K. Brodie, supra; and he did not so participate in control of the employer that its conduct in withholding the payment could be said to have been the result of his own act. Cf. John A. Brander, supra. Limiting our conclusion to the tax year before us, we find no warrant for attributing this income to petitioner Anderson. Clifton B. Russell, 5 T.C. 974. Decision in Docket No. 6825 previously entered for respondent on June 14, 1946, pursuant to stipulation filed June 11, 1946. Decisions in Docket Nos. 6826, 6827, and 6837 will be entered under Rule 50. Footnotes
*. Decision in this proceeding was entered for respondent on June 14, 1946, pursuant to stipulation of the parties.↩
1. Petitioner George C. Dade subsequently consented to respondent's determination and as to him an order has already been entered.↩